**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RICHARD F. FISHER,

        Plaintiff,

   v.

CITY OF PITTSBURG, et al.,

        Defendants.

_____/

No. C 05-2774 CW (PR)

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REFERRING CASE TO PRO SE PRISONER SETTLEMENT PROGRAM

(Docket no. 66)

INTRODUCTION

On April 1, 2005, Plaintiff Richard F. Fisher was driving a vehicle with no rear license plate and a broken rear tail light. He was pursued and eventually apprehended by City of Pittsburg Police Sergeants Semas and Calia as well as Officers R.L. Thompson, L. Galer and Del Greco.  What occurred during the course of the pursuit, apprehension and arrest of Plaintiff is the subject matter of this lawsuit.

On July 6, 2005, Plaintiff, a state prisoner currently incarcerated at Avenal State Prison, filed a <u>pro se</u> civil rights action against Defendants City of Pittsburg, City of Pittsburg Police Department, Del Greco, Thompson and Galer.  Plaintiff raises the following claims:  (1) excessive force in effectuating an arrest; (2) racial discrimination; and (3) municipal liability. (Verified Compl. at 2.)

In an Order dated January 25, 2006, the Court found Plaintiff alleged a cognizable excessive force claim against Defendants Thompson, Galer and Del Greco as well as a cognizable municipal liability claim against the City of Pittsburg and the City of Pittsburg Police Department.  (Jan. 25, 2006 Order at 2-3.)  The

**United States District Court**
For the Northern District of California

Court also granted Plaintiff leave to add a Doe Defendant described as "the police sergeant whom he alleges was involved."[1]  (Id. at 3.)

On May 30, 2007, the Court referred this case to Magistrate Judge Elizabeth Laporte for discovery purposes.

On September 17, 2007, the Court referred this case to Magistrate Judge Nandor Vadas for settlement purposes.  Magistrate Judge Vadas filed a report informing the Court that the case did not settle.

On January 31, 2008, Defendants City of Pittsburg, City of Pittsburg Police Department, Thompson and Galer filed a motion for summary judgment on the grounds that no triable issue of material fact exists, and they are entitled to judgment as a matter of law.[2] Plaintiff did not file an opposition.[3]

---

[1] The Court instructed Plaintiff to promulgate discovery in order to identify this Doe Defendant.  The Court notes that the record includes an excerpt from Plaintiff's November 20, 2007 deposition, which states that Plaintiff has learned that Sergeants Semas and Calia were present at his arrest and apprehension. (Pl.'s Dep. 38:13, Nov. 20, 2007.)  However, as of the date of this Order, Plaintiff has not identified either sergeant as the Doe Defendant in this action.  If Plaintiff wishes to name this Doe Defendant, he shall file a motion making such a request as directed below.

[2] Defendant Del Greco did not join the other defendants in their motion for summary judgment.

[3] Plaintiff's opposition was due on August 22, 2008, after the Court granted him two prior extensions.  He was advised pursuant to Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc), that to prevent summary judgment in favor of Defendants, he "must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial."  (Jan. 25, 2006 Order at 5 (quoting Rand, 154 F.3d at 962-63).  Plaintiff was also warned:  "If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you."  Id.

**United States District Court**
For the Northern District of California

1   For the reasons discussed below, Defendants' motion for

2   summary judgment is GRANTED in part and DENIED in part.

3                              BACKGROUND

4       At approximately 2:38 p.m. on April 1, 2005, Defendant

5   Thompson was driving a fully marked City of Pittsburg Police

6   Department vehicle when he observed a 1985 Toyota driven by

7   Plaintiff turn onto Polaris Drive.  (Thompson Decl., Ex. A,

8   Thompson Incident Report at 4.)  Plaintiff's vehicle had no rear

9   license plate and a broken rear tail light on the passenger side.

10  (Id.)  Plaintiff was accompanied by two passengers, Mr. Pena and

11  Ms. Serrano.  (Thompson Decl. ¶ 4.)  When Defendant Thompson

12  attempted to effectuate a traffic stop on Plaintiff's vehicle,

13  Plaintiff drove away.  (Id.)  Defendant Thompson immediately

14  informed dispatch that he was in pursuit of Plaintiff's vehicle.

15  (Thompson Decl., Ex. A, Thompson Incident Report at 4.)

16      Defendant Galer was the first one who responded to help

17  Defendant Thompson, and together they pursued Plaintiff's vehicle

18  for approximately three miles.  (Id. at 5.)  Plaintiff stopped his

19  vehicle on Solari Street and fled on foot.  (Id.)  The two

20  passengers remained inside the vehicle.  (Id.)  Defendant Galer

21  continued to pursue Plaintiff while Defendant Thompson remained

22  with the two passengers.  (Galer Decl. ¶ 3; Thompson Decl. ¶ 5.)

23  Defendant Thompson alleges that he did not have any contact with

24  Plaintiff until they arrived at the police station.  (Thompson

25  Decl. ¶ 5.)

26      Sergeants Semas and Calia as well as Defendant Del Greco also

27  responded to help Defendant Thompson.  (Thompson Decl., Ex. A, Del

28  Greco Continuation/Supplementary Report at 1.)  They proceeded to

                                   3

**United States District Court**
For the Northern District of California

1   the backyard of 405 Central Avenue to assist Defendant Galer in

2   apprehending Plaintiff.  (Id.)  Plaintiff attempted to hide beneath

3   a trailer.  (Id.)  Defendant Galer reached for Plaintiff's belt and

4   pulled him from beneath the trailer.  (Id. at 2.)  Defendant Galer

5   alleges that Plaintiff resisted his efforts.  (Galer Decl. ¶ 5.)

6   Defendant Galer claims that "this was the only physical contact

7   [he] had with Mr. Fisher."  (Id.)  Plaintiff was handcuffed and

8   taken into custody.  (Thompson Decl., Ex. A, Del Greco

9   Continuation/Supplementary Report at 2.)  Defendants Thompson and

10  Galer deny punching, kicking or kneeing Plaintiff.  (Galer Decl.

11  ¶ 4; Thompson Decl. ¶ 4.)  They also claim they did not see any

12  other officers punch, kick or knee Plaintiff.  (Id.)

13      In contrast, Plaintiff alleges that after he was handcuffed,

14  he was kicked, punched and elbowed by Defendants Galer and Del

15  Greco as well as Sergeant Semas and Calia.  (Rooney Decl. In Supp.

16  of Mot. for Summ. J., Ex. A, Pl.'s Dep. (hereinafter Pl.'s Dep.)

17  63:18-20.)  Plaintiff testified that Defendant Thompson remained at

18  Plaintiff's vehicle with both passengers throughout the beating.

19  (Id. at 38:14-20.)

20      According to Plaintiff, he "almost passed out" because he was

21  kicked in the face by one of the officers while he was on the

22  ground and handcuffed.  (Id. at 63:1-5.)  When the officers stood

23  him upright, Plaintiff claims they elbowed, kneed and punched his

24  back, neck and head.  (Id. at 63:7-64:3.)

25      When questioned as to Defendant Galer's involvement, Plaintiff

26  testified that Officer Galer used excessive force "by beating [him]

27  after [he] was handcuffed."  (Id. at 70:19-20.)  When asked what

28  specific "blow" Defendant Galer delivered, Plaintiff stated, "I

1   can't really say which one blow that he gave me, but he was there

2   and he did participate in this.  That's the best I can give you."

3   (Id. at 70:11-13.)

4        Plaintiff stated that it was either Defendant Del Greco or

5   Sergeant Calia who "punched him" in the "side of [his] head."[4]

6   (Id. at 71:5-13.)  However, when asked whether his testimony was

7   that "Officer Del Greco punched [Plaintiff] on the side of [his]

8   head," Plaintiff answered, "Yes."  (Id. at 71:19-22.)

9        Plaintiff's injuries included "a two inch laceration of R.

10  cheek, contusions of the eye (R), back, facial area, knee (L),

11  wrist (R&L), and neck."  (Rooney Decl. In Supp. of Mot. to Compel,

12  Ex. D, Pl.'s Interrogs. at 1.)  Plaintiff states, "All contusions

13  had a duration of approximately ten (10) days, and facial

14  laceration approximately four (4) weeks."  (Id.)  Plaintiff claims

15  that he "continues to have pain" in his "knee, foot, face, neck and

16  wrists" at the time he filed his answer to Defendants' special

17  interrogatories, which was more than a year after the alleged

18  beating.  (Id.)

19                          DISCUSSION

20  I.   Legal Standard For Summary Judgment

21       Summary judgment is properly granted when no genuine and

22  disputed issues of material fact remain and when, viewing the

23  evidence most favorably to the non-moving party, the movant is

24  clearly entitled to prevail as a matter of law.  Fed. R. Civ. P.

25  56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

26  Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.

27  _____

28       [4] As mentioned above, Plaintiff has not moved to add Sergeant
    Calia as a defendant in this action.

1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  <u>Celotex</u>, 477 U.S. at 324; <u>Eisenberg</u>, 815 F.2d at 1289.  The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1558 (9th Cir. 1991).  A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  <u>Schroeder v. McDonald</u>, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

<u>Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Companies, Inc.</u>, 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an

United States District Court
For the Northern District of California

absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation.  Nissan, 210 F.3d at 1105.  If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists.  Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition.  Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial.  Id. at 1107.

II.  Evidence Considered

A district court may only consider admissible evidence in ruling on a motion for summary judgment.  See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).

In support of their motion for summary judgment, Defendants have submitted declarations by Defendants Thompson and Galer as

well as their attorney, Owen T. Rooney (docket nos. 67, 68, 69).
Attached to the declarations are the following:  Plaintiff's
deposition; the City of Pittsburg Police Department Incident Report
in Case no. C05-2551; and Defendants Thompson's and Del Greco's
Continuation/Supplementary Reports in Case no. C05-2551.

Plaintiff verified his original complaint filed on July 6,
2005 by signing it under penalty of perjury; therefore, the Court
will refer to it as his "verified complaint."

Also in the record is Plaintiff's "Answer to the Special
Interrogatories of Defendants," which was signed by Plaintiff under
the penalty of perjury.[5]  In this document, Plaintiff lists the
injuries he received as a result of the allegations contained in
his verified complaint.

Therefore, the Court will treat Plaintiff's verified complaint
and his answer to Defendants' special interrogatories as opposing
affidavits under Rule 56 of the Federal Rules of Civil Procedure.

III. Fourth Amendment Claim

Plaintiff claims that Defendants Thompson and Galer used
excessive force in apprehending him on April, 1, 2005.  The Court
previously determined that this claim is cognizable under the
Fourth Amendment.

A.   Applicable Legal Standard

The Fourth Amendment proscribes "unreasonable searches and
seizures."  U.S. Const. amend. IV; <u>Franklin v. Foxworth</u>, 31 F.3d

_____

[5] Plaintiff's "Answer to the Special Interrogatories of
Defendants" was attached as Exhibit D of the declaration filed by
Defendants' attorney in support of the motion to compel further
answers to interrogatories (docket no. 29).

United States District Court
For the Northern District of California

873, 875 (9th Cir. 1994).  The reasonableness of a search or seizure depends "on how it is carried out."  Tennessee v. Garner, 471 U.S. 1, 7-8 (1985) (emphasis in original).  The reasonableness test established in Graham v. Connor, 490 U.S. 386 (1989), applies to cases involving police use of excessive force in making stops or arrests, and to the manner in which the police conduct any search or seizure.  See Franklin, 31 F.3d at 876.

Determining whether the force used to effect a particular seizure is reasonable requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.  Graham, 490 U.S. at 396.

The United States Supreme Court listed several factors to determine the reasonableness of the use of force under the Fourth Amendment:  (1) severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight, and (4) whether the totality of the circumstances justified a particular sort of seizure. Graham, 490 U.S. at 396.  These factors are not exclusive, however, and the totality of the particular circumstances of each case must be considered.  Fikes v. Cleghorn, 47 F.3d 1011, 1014 (9th Cir. 1995).  Furthermore, the reasonableness of a "particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.

Police officers are not required to use the least intrusive degree of force possible; they are required only to act within a

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

reasonable range of conduct.   See Forrester v. City of San Diego,
25 F.3d 804, 806-07 (9th Cir. 1994), cert. denied, 513 U.S. 1152
(1995) (use of minimal and controlled force in manner designed to
limit injuries reasonable); see also Scott v. Henrich, 39 F.3d 912,
915 (9th Cir. 1994) (requiring officers to find and choose least
intrusive alternative would require them to exercise superhuman
judgment), cert. denied, 515 U.S. 1159 (1995).

A defendant is entitled to summary judgment on a Fourth
Amendment use of force claim where there is no genuine issue for
trial because the record taken as a whole would not lead a rational
trier of fact to find for the plaintiff.   See Henderson v. City of
Simi Valley, 305 F.3d 1052, 1061 (9th Cir. 2002).   Similarly,
summary judgment will be available if the district court concludes,
after resolving all factual disputes in favor of the plaintiff,
that the officer's use of force was objectively reasonable under
the circumstances.   See Johnson v. Woodard, 340 F.3d 787, 792-93
(9th Cir. 2003).

   B.   Analysis

      1.   Defendant Thompson

Plaintiff fails to state facts to support his excessive force
claim against Defendant Thompson.   At his deposition, Plaintiff
stated, "I finally looked and seen who was around me because I was
being dealt with physically, then I kind of looked and seen that
they -- them four, Galer, Calia, Semis,[6] and Greco were there.   I
didn't see Thompson.   I don't know where he was."   (Pl.'s Dep.
38:10-15.)   When Plaintiff was asked which officer stayed back at

---

   [6] In Plaintiff's deposition, Sergeant Semas's name is
misspelled as "Semis."

**United States District Court**
For the Northern District of California

the car with Mr. Pena and Ms. Serrano, Plaintiff answered,
"Thompson."  (Id. 38:19-20.)

     Although Defendant Thompson was involved in the initial
pursuit of Plaintiff's vehicle, Plaintiff fails to raise a genuine
issue of fact regarding Defendant Thompson's use of force against
him, an element essential to his excessive force claim.
Accordingly, Defendant Thompson is entitled to summary judgment on
the excessive force claim as a matter of law.  See Celotex Corp.,
477 U.S. at 323.

     2.   Defendant Galer

     Defendant Galer admits to using some force against Plaintiff
when he resisted by failing to come out from under the trailer.
(Galer Decl. ¶ 5.)  Defendant Galer claims that he grabbed
Plaintiff's belt with his left hand and pulled Plaintiff out.
(Id.)  Defendant Galer denies having any other physical contact
with Plaintiff.  (Id.)  While Plaintiff may not have been
conducting himself in a manner that posed an immediate threat to
Defendants or others, he was actively fleeing from Defendants in an
attempt to evade arrest.  See Graham, 490 U.S. at 396 (whether the
suspect was attempting to evade arrest by flight is one of the
factors to determine the reasonableness of the use of force under
the Fourth Amendment); see also Johnson, 340 F.3d at 792-93
(finding deputy sheriff's pulling and twisting of armed bank
robbery suspect to extract him from the back seat of his car and
take him into custody following a high-speed car chase and crash
objectively reasonable as a matter of law).  Defendant Galer was
not required to use the least intrusive degree of force possible;
he was required only to act within a reasonable range of conduct.

United States District Court
For the Northern District of California

See Forrester, 25 F.3d at 806-07.  Plaintiff presents no evidence that, by reason of his physical condition, or any other circumstance, the technique in question posed an unreasonable risk of harm to him.  Therefore, the undisputed facts show that the force used by Defendant Galer to pull Plaintiff from underneath the trailer was objectively reasonable.

Plaintiff also alleges that Defendant Galer, along with three other officers, used excessive force by punching, kicking, kneeing and elbowing him after he was handcuffed.  The force applied by the officers must be balanced against the need for that force.  See Drummond v. City of Anaheim, 343 F.3d 1052, 1058-60 (9th Cir. 2003).  The Court finds that the use of force in this manner against a suspect who has been handcuffed would not be objectively reasonable as a matter of law.  See id. (finding that once suspect handcuffed on ground without offering resistance, two officers who knelt on him and pressed their weight against his torso and neck despite his pleas for air used excessive force).  Defendant Galer argues that he is entitled to summary judgment because Plaintiff failed to identify the specific blow that he delivered.  Plaintiff claims that four different officers used excessive force against him from different angles, that he suffered injuries from the blows he received, and that he was losing consciousness during the beating.  Under these circumstances, it is possible that Plaintiff would be not be able to attribute specific blows to each officer. Although Defendant Galer denies participating in the beating, Plaintiff has testified otherwise.  (Pl.'s Dep. at 71:11-20.) Thus, Plaintiff has created a genuine issue of fact as to whether Defendant Galer used excessive force against him after he was

**United States District Court**
For the Northern District of California

1   handcuffed.

2       Therefore, the Court finds that Defendant Galer is not

3   entitled to summary judgment on the excessive force claim as a

4   matter of law.

5   IV.  Qualified Immunity

6       Defendant Galer argues, in the alternative, that summary

7   judgment is warranted because, as a government official, he is

8   entitled to qualified immunity from Plaintiff's excessive force

9   claim.

10      A.   Standard of Review

11      The inquiries for qualified immunity and excessive force are

12  distinct.  <u>Saucier v. Katz</u>, 533 U.S. 194, 204 (2001).

13      The qualified immunity doctrine acknowledges that reasonable

14  mistakes can be made as to the legal constraints on particular

15  police conduct.  <u>Id.</u>  It is sometimes difficult for an officer to

16  determine how the relevant legal doctrine applies to the factual

17  situation the officer confronts.  <u>Id.</u>  An officer might correctly

18  perceive all of the relevant facts but have a mistaken

19  understanding as to whether a particular amount of force is legal

20  in those circumstances.  If the officer's mistake as to what the

21  law requires is reasonable, however, the officer is entitled to the

22  immunity defense.  <u>Id.</u>

23      <u>Graham</u> does not always give a clear answer as to whether a

24  particular application of force will be deemed excessive by the

25  courts.  <u>Id.</u>  This is the nature of a test which must accommodate

26  limitless factual circumstances.  <u>Id.</u>  Qualified immunity operates

27  in excessive force cases, then, to protect officers from the

28  sometimes "'hazy border between excessive and acceptable force.'"

13

United States District Court
For the Northern District of California

Id. at 206 (citation omitted).

When government officials assert the defense of qualified immunity in an excessive force case brought under § 1983, a court's analysis must proceed in the following manner:  first, the court must determine as a threshold question whether the plaintiff has shown the deprivation of a constitutional right, and then the court must determine whether the right violated was clearly established under Saucier.  Deorle v. Rutherford, 272 F.3d 1272, 1278-79 (9th Cir. 2001) (citing Saucier, 533 U.S. at 201).  If the court determines that the plaintiff has not shown the deprivation of a constitutional right (e.g., the force used was objectively reasonable as a matter of law), it need not go further.  See Johnson, 340 F.3d at 791-94.

B.   Analysis

Applying the first prong of Saucier, determining whether there was a constitutional violation, the Court has found that, viewing the evidence in the light most favorable to Plaintiff, the force used against him after he was handcuffed did amount to a Fourth Amendment violation.  Applying the second prong of Saucier, the Court must determine whether the right violated was clearly established under Saucier.  Deorle, 272 F.3d at 1278-79 (citing Saucier, 533 U.S. at 201).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 201-02 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  It is not disputed that, at the time of Defendant Galer's actions, the use of excessive force by a law enforcement officer in

United States District Court
For the Northern District of California

effectuating an arrest was a violation of the Fourth Amendment.  A
reasonable officer could not have believed that the amount of force
allegedly used -- kicking, punching, elbowing and kneeing a suspect
that has been handcuffed -- was lawful in light of clearly
established law and the information that Defendant Galer possessed
at the time of the incident.  See Saucier, 533 U.S. at 205.

Therefore, under Saucier, Defendant Galer is not entitled to
qualified immunity as a matter of law with respect to Plaintiff's
claim of excessive force used against him after he was handcuffed.

V.   Municipal Liability Claim

Plaintiff alleges that the City of Pittsburg Police Department
and the City of Pittsburg are responsible for his injuries because
of their hiring practices.  (Verified Compl. at 3.)  Plaintiff
states he would like the Court to "look into . . . the City of
Pittsburg for hiring officers like these."  (Id.)  Defendants
contend that Plaintiff has not satisfied the requirements for suing
a municipality because Plaintiff has not alleged any type of
violation of departmental policy, practice or custom.

A.   Standard of Review

A municipality can be sued as a "person" under 42 U.S.C.
§ 1983 if "execution of a government's policy or custom, whether
made by its lawmakers or by those whose edicts or acts may fairly
be said to represent official policy, inflicts the injury . . . ."
Monell v. Dept. of Social Services, 436 U.S. 658, 690 (1978).  In
order to sue a municipal employee for failure to protect
constitutional rights the plaintiff must satisfy four elements:
(1) that the plaintiff possessed a constitutional right, of which
he was deprived; (2) that the municipality had a policy; (3) that

United States District Court
For the Northern District of California

the policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the municipal policy is a moving force behind the constitutional violation.  Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992).

An actionable municipal policy can be established through evidence of a facially unconstitutional policy, or through an isolated act of a policy maker if the single act amounts to deliberate indifference to a substantial risk that a violation of federal law will result.  Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986).  However, a single incident of an officers' alleged use of excessive force against a plaintiff is insufficient to generate a genuine issue as to whether the municipality has a policy of allowing such force.  See McDade v. West, 223 F.3d 1135, 1142 (9th Cir. 2000) (proof of random acts or isolated incidents of unconstitutional action by a non-policymaking employee are insufficient to establish the existence of a municipal policy or custom).

B.   Analysis

Plaintiff has not presented any evidence of an unconstitutional policy.  While Plaintiff challenges their hiring practices, he has failed to demonstrate that Defendants City of Pittsburg and City of Pittsburg Police Department maintained a policy that resulted in the violation of his constitutional rights.  Thus, Plaintiff has failed to provide evidence supporting his municipal liability claim.  Accordingly, Defendants City of Pittsburg and City of Pittsburg Police Department are entitled to summary judgment on the municipal liability claim as a matter of law.  See Celotex Corp., 477 U.S. at 323.

United States District Court
For the Northern District of California

VI.   Equal Protection Claim

    Plaintiff claims he was "beaten by the Pittsburg Police Department for no reason other than of [his] race, color or creed." (Verified Compl. at 2.)  Defendants Thompson and Galer contend that Plaintiff's vehicle was stopped because it had no rear license plate and a broken tail light.  (Thompson Decl., Ex. A, Thompson Incident Report at 4.)  Defendants Thompson and Galer claim they did not notice Plaintiff's ethnicity at the time they attempted to effectuate the traffic stop and could not identify Plaintiff's ethnicity until after Plaintiff stopped his vehicle.  (Thompson Decl. ¶ 3; Galer Decl. ¶ 3.)  As mentioned above, Defendants Thompson and Galer also deny any involvement in Plaintiff's alleged beating.  (Thompson Decl. ¶ 4; Galer Decl. ¶ 4.)

    A.   Standard of Review

    Proof of racially discriminatory intent or purpose is required to make out a racial discrimination claim; the Equal Protection Clause of the Fourteenth Amendment is not violated by unintentional conduct which has a disparate impact on minorities.  See Washington v. Davis, 426 U.S. 229, 239-40 (1976).  Discriminatory intent may be proved by direct or circumstantial evidence.  See Lowe v. City of Monrovia, 775 F.2d 998, 1011 (9th Cir. 1985), amended on other grounds, 784 F.2d 1407 (9th Cir. 1986).  Where a plaintiff relies solely upon instances of allegedly disparate treatment, he must establish a "clear pattern, unexplainable on grounds other than race."  Arlington Heights v. Metro. Hous. Corp., 429 U.S. 252, 266 (1977).

    B.   Analysis

    Plaintiff's conclusory allegations that he was arrested and

17

United States District Court
For the Northern District of California

beaten because of his race are not supported by any factual evidence. See Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (conclusory allegations insufficient to defeat summary judgment). Defendant Thompson and Galer claim that the traffic stop was initiated in response to Plaintiff driving a vehicle in violation of the Vehicle Code and not because of his race. Plaintiff has provided no factual evidence to support his claim that the alleged beating was racially motivated. Thus, the record shows that there is no genuine issue of material fact as to Plaintiff's Equal Protection claim. Accordingly, Defendants Thompson and Galer are entitled to summary judgment on the racial discrimination claim as a matter of law. See Celotex Corp., 477 U.S. at 323.

CONCLUSION

For the foregoing reasons,

1. Defendants' motion for summary judgment is GRANTED in PART and DENIED in PART (docket no. 66). Summary judgment is DENIED as to Plaintiff's excessive force claim against Defendant Galer and GRANTED as to Plaintiff's excessive force claim against Defendant Thompson, his equal protection claim against Defendants Thompson and Galer, and his municipal liability claim against Defendants City of Pittsburg and City of Pittsburg Police Department.

2. If Plaintiff wishes to name the Doe Defendant, specifically the "police sergeant" involved in the April 1, 2005 incident, and add him as a defendant in this action, Plaintiff shall file a motion making such a request no later than thirty (30) days from the date of this Order. If Plaintiff fails to do so within the thirty-day period, Plaintiff's excessive force claim

18

against the Doe Defendant will be dismissed without prejudice.

3.    Unless this case can be settled it will have to be tried.

4.    The Northern District of California has established a Pro Se Prisoner Settlement Program.  Certain prisoner civil rights cases may be referred to a neutral magistrate judge for prisoner settlement proceedings.  This case has previously been referred to Magistrate Judge Vadas for a settlement conference, and the Court finds that another referral is in order now that Plaintiff's excessive force claim has survived summary judgment.  Thus, this case is again REFERRED to Magistrate Judge Vadas for a settlement conference.  The conference may be conducted at Avenal State Prison, and Defendants and/or their representative shall attend in person, or may contact Magistrate Judge Vadas to seek permission to attend by videoconferencing, if available, or by telephone.

The conference shall take place within sixty (60) days of the date of this Order, or as soon thereafter as is convenient to the magistrate judge's calendar.  Magistrate Judge Vadas shall coordinate a time and date for the conference with all interested parties and/or their representatives and, within ten (10) days after the conclusion of the conference, file with the Court a report regarding the conference.

The Clerk of the Court shall provide a copy of this Order, and copies of documents from the court file that are not accessible electronically, to Magistrate Judge Vadas.

5.    The Clerk of the Court shall send a copy of this Order to Plaintiff.

6.    The Clerk shall prepare an Order for Pretrial Preparation, setting the case for a pretrial conference and a five

United States District Court
For the Northern District of California

day jury trial.

      7.   This Order terminates Docket no. 66.

      IT IS SO ORDERED.



Dated:  9/24/08

_____
CLAUDIA WILKEN
United States District Judge

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

1

2

3

FISHER,

4                          Plaintiff,

Case Number: CV05-02774 CW

5          v.

**CERTIFICATE OF SERVICE**

6

CITY OF PITTSBURG CALIFORNIA ET AL et

7 al,

8                  Defendant.
_____/

9

10 I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
Court, Northern District of California.

11 That on September 24, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said

12 copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle

13 located in the Clerk's office.

14

15 Peter Pratt Edrington
Timothy Patrick Murphy

16 Owen Thomas Rooney
Edrington Schirmer & Murphy

17 2300 Contra Costa Boulevard, Suite 450
Pleasant Hill, CA 94523

18

19 Richard F. Fisher T-83070
CA State Prison-Avenal
140-1-0-5-L

20 P.O. Box 9
Avenal, CA 93204

21

22 Magistrate Judge Nandor Vadas
P.O. Box 1306
Eureka, CA 95502

23

24

25 Dated: September 24, 2008

Richard W. Wieking, Clerk
By: Sheilah Cahill, Deputy Clerk

26

27

28

**United States District Court**
For the Northern District of California